**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **KENNETH R. HUBERT**, <br><br> Defendant. | Case No: 21-05008-01-CR-SW-MDH |

## UNITED STATES' SENTENCING MEMORANDUM AND OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT

The United States of America, by and through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on November 16, 2021. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the United States (also referred to herein as "the Government") respectfully recommends that this Court sentence the defendant, Kenneth R. Hubert, to concurrent terms of imprisonment of 32 months for each of his convictions of threatening to assault a United States official under Counts 1 and 2 of the Indictment, in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4). The United States recommends that this term of imprisonment be followed by concurrent three-year terms of supervised release for Counts 1 and 2.

### I. BACKGROUND

On February 23, 2021, a grand jury seated in Springfield, Missouri returned an Indictment charging the defendant with two counts of threatening to assault and murder a United States official, in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4), and one count of transmitting a threat

through interstate commerce, in violation of 18 U.S.C. § 875(c). (D.E. 1.)[1] On June 17, 2021, the defendant pleaded guilty to Counts 1 and 2 of the Indictment, for violating 18 U.S.C. § 115(a)(1)(B) and (b)(4), pursuant to a plea agreement. (D.E. 19-20.)

The United States Probation Office submitted its draft presentence investigation report on August 16, 2021. The United States submitted an objection to the draft report that affects the applicable Guidelines range. (PSR Adden.)[2] The Probation Officer then filed the final presentence investigation report ("PSR") on September 10, 2021, in which she disagreed with the objection of the United States. (D.E. 24.) The sentencing hearing is scheduled for November 16, 2021. (D.E. 27.)

## II. FORMULATION OF THE DEFENDANT'S SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional demands. *Id.* at 258. While this Court is not bound to impose a sentence based solely on the Guidelines, the Court "nevertheless must consult the Guidelines to calculate a defendant's sentence because the Guidelines are the critical starting point for fashioning a reasonable sentence [under the statutory sentencing factors]." *United States v. Gregg*, 467 F.3d 1126, 1128 (8th Cir. 2006) (internal quotation omitted). Pursuant to the Sentencing Guidelines, the Court "shall determine the kinds of sentencing and the guideline range as set forth in the guidelines by applying the provisions of this manual . . . ." U.S.S.G. §1B1.1(a). After considering the Sentencing Guidelines, the Court

---

[1] "D.E." refers to the docket entry of the instant district court criminal case, case number 21-05008-01-CR-SW-MDH, and any associated documents.

[2] "PSR Adden." refers to the presentence investigation report addendum, filed on September 10, 2021.

"shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. §1B1.1(c); *see also* 18 U.S.C. § 3553(a).

After making that determination, the district court, utilizing the § 3553(a) sentencing factors, can impose a more severe or more lenient sentence, as long as it is reasonable. *See Booker*, 543 U.S. at 263-65. The § 3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

Upon correctly calculating the Guidelines range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of a sentencing set forth in 18 U.S.C. § 3553(a). *Id*. As explained below, a Guidelines range sentence of 32 months' incarceration satisfies the criteria set forth in § 3553(a) and is a reasonable and just sentence given the facts and circumstances of the case now before this Court.

### III. DISCUSSION

**A.  The Court Should Apply the Agreed-Upon Enhancement under U.S.S.G. §2A6.1(b)(2)(A) and Should Modify the Applicable Guidelines Range.**

The parties agreed in the plea agreement that the Court should apply a two-level sentencing enhancement pursuant to U.S.S.G. §2A6.1(b)(2)(A), as the defendant made more than two threats. (D.E. 20, ¶ 10.c.) Paragraphs 33 through 36 of the PSR detail several other threats made by the defendant from 2014 through January 6, 2021, which the Probation Officer did not include as

3

relevant offense conduct in paragraphs 3 through 8. Included among these other threats were the defendant's threats on January 6, 2021 to the Missouri Democratic Party ("MDP"), which related to the fatal riot at the United States Capitol and were made just a day before he made the charged threat to Representative Emanuel Cleaver II of the United States House of Representatives.

The United States initially objected to the conduct in paragraphs 33 to 36 not being classified as relevant conduct. Accordingly, the Government also objected to paragraphs 14, 18, 20, 24, 28, 32, and 62, which contained Guidelines calculations that did not apply the agreed-upon enhancement under U.S.S.G. §2A6.1(b)(2)(A). Upon review of the Probation Officer's response to the Government's objection regarding relevant conduct, the Government now withdraws its objection relating to these other threats not being included as relevant conduct. However, the United States still seeks application of the two-point enhancement under U.S.S.G. §2A6.1(b)(2)(A).

Section 2A6.1(b)(2)(A) "does not require the district court to specifically find that prior threats are 'relevant conduct' under U.S.S.G. §1B1.3 prior to applying the enhancement." *United States v. Harrison*, 599 Fed. Appx. 654, 655 (9th Cir. 2015). "Prior threatening acts may be considered so long as they have a substantial and direct connection to the offense." *Id*. (citing U.S.S.G. §2A6.1 n.1). Given the proximity in time between the defendant's January 6, 2021 threats to the MDP and the January 7, 2021 threat to Representative Cleaver (a Democrat), and the overall goal of terrorizing and threatening members of a political party during and in the wake of the Capitol riot, these threats had a substantial and direct connection to one another. Further, the defendant's prior threats toward President Barack Obama and the Council of American-Islamic Relations were directly connected to his convicted offenses as they were all just a continuation of his threats to minorities, groups advocating for minorities and certain religious beliefs, and

members of a specific political party. The defendant carried out these threats using the same method: calling the officials and organizations over the telephone and either making threats through voicemail messages or through speaking with an individual in those respective offices.

For all of the above reasons, a two-level enhancement derived from U.S.S.G. §2A6.1(b)(2)(A) should be applied in paragraphs 14 and 20, as there were more than two threats, as agreed to in the plea agreement between the parties. *See* (D.E. 20, ¶ 10.c). Paragraphs 18 and 24 should then reflect an adjusted offense level of 20. Paragraph 28 should reflect a combined adjusted offense level of 22 and paragraph 32 should reflect a total offense level of 19. Finally, paragraph 62 should state that the total offense level is 19 and the applicable guideline imprisonment range is 30 months to 37 months.

**B.** **Statutory and Guidelines Calculations**

As a result of the defendant's plea, his statutory maximum sentence for each of the class D felonies of threatening to assault a United States official, under Counts 1 and 2, is not more than six years' imprisonment. (PSR ¶ 62.) The PSR assessed the defendant a criminal history score of zero, and found that the defendant's criminal history category was "I" and the total offense level was 17. (PSR ¶¶ 32, 43.) The PSR stated that the Court may impose a concurrent term of supervised release of not more than three years for each of his convictions under Counts 1 and 2. (PSR ¶¶ 65-66.) Based on the defendant's criminal history category of "I" and a total offense level of 17, the PSR found a Guidelines imprisonment range of 24 months to 30 months each for Counts 1 and 2, with the defendant ineligible for probation, and a Guidelines supervised release term of one year to three years for each count. (PSR ¶¶ 63, 67, 70.) As stated above, the United States disagrees with the calculated total offense level and the applicable Guidelines range.

C. **Statutory Sentencing Factors**

   1. ***Nature and Circumstances of the Offense and History of the Defendant***

The Government's recommended sentence of 32 months' imprisonment appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). "In fashioning a 'sentence sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider the history and characteristics of the defendant.'" *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)). Consequentially, "factors such as a defendant's age, medical condition, prior military service, family obligations ... etc., can form the bases for a variance even though they would not justify a departure." *Id*. at 830-31 (citing *United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005)).

The PSR and the factual basis contained in the plea agreement discussed the facts and circumstances of this case. (PSR ¶¶ 3-8, 33-36; D.E. 20, ¶ 3.) In the instant matter, the defendant threatened to assault Representatives Steve Cohen and Emanuel Cleaver II of the United States House of Representatives. First, in 2019, the defendant called Rep. Cohen's Washington, D.C. office and stated, "he has a noose with the Congressman's name on it" and planned to "put a noose around his neck and drag him behind his pickup truck." Then, on January 7, 2021, the defendant left a voicemail at the Independence, Missouri office of Rep. Cleaver, stating,

> Cleaver's got to be the dumbest n***** I've ever heard and that don't speak much for the black people in Kansas City and Independence and anyone else who voted for this clown. He's as dumb as a rock. Amen, a-woman? How about a noose . . . around his neck? He's a dumb mother fucker. He's stupid as a idiot.

This threat to Rep. Cleaver came just one day after the fatal riot at the United States Capitol, during which the defendant called the MDP and left two threatening voicemails. On the morning of January 6, the defendant called the MDP and stated, "You motherfuckers better stay in hiding.

6

Steal the election, we got something for you." Later that day, the defendant left another voicemail for the MDP, stating, "You see the shit happening at the Capitol? It's coming your way next."

These threats are consistent with his conduct throughout the last several years as he has made harassing and threatening communications towards minorities, groups advocating for minorities and certain religious beliefs, and members of a specific political party. Despite law enforcement directing him on several occasions to cease these types of communications, the defendant continued to make threats. His past conduct reflects a dangerous individual who does not feel restrained by societal norms, laws, or the specific orders of law enforcement. In short, the defendant is a menace to the community.

The defendant's conduct on January 6 and 7 of this year is especially egregious, given that it was paired with the violent Capitol riot targeting the certification proceedings of the 2020 Presidential election and during which several individuals died. Indeed, the defendant aimed to spread the terror of the Capitol mob outside the confines of Washington, D.C. to the state of Missouri. Again, after law enforcement contact related to those threats to the MDP, the defendant, on the very next day, targeted a United States Congressman with yet another threat.

In evaluating the nature and circumstances of these offenses, it may be difficult for the Court to assess whether the defendant is a cause or a product of the current political rhetoric. Although the defendant's actions on January 6 and 7 may have been informed by various media coverage and politician statements, he should be held responsible for his actions, especially considering his past threats. The defendant's habit of threatening certain individuals and groups existed well before the disinformation surrounding the 2020 election cycle.

Aside from several traffic offenses, the defendant's past and instant threats encapsulate his entire criminal history. He is a 63-year-old male who has a criminal history score of zero and a

criminal history category of "I." (PSR 3, ¶ 43.) The defendant reported that he had "a good childhood where all his needs were met." (PSR ¶¶ 48-49.) His parents were married until their deaths and the defendant maintains contact with his five siblings. *Id*. The defendant has been married one time, which ended in divorce, and he has no children. (PSR ¶ 50.)

The PSR indicated that the defendant has physical health issues related to diabetes and spinal degeneration, and only has partial use of his right arm from a past truck accident. (PSR ¶ 52.) He recently has suffered from COVID-19, hypertension, and arthritis. (PSR ¶ 53.) The defendant is currently not suffering from any mental health problems and the PSR does not report any substance abuse issues. (PSR ¶¶ 54-55.)

The defendant attended primary school through the ninth grade and later earned his GED in 1975. (PSR ¶ 56.) He attended some college but did not graduate. *Id*. The defendant was unemployed during the four years surrounding the instant charged conduct and received Social Security disability. (PSR ¶ 58.) Prior to going on disability, the defendant was employed as a truck driver and a prison guard. *Id*. The defendant also served in the United States Army from 1976 to 1983, working in the military police and as a power generator equipment repairer. (PSR ¶ 59.)

In making its recommendation, the Government has taken into consideration the instant offenses, the defendant's related threats, his lack of other criminal history, his candid acceptance of responsibility, and his past service in the military. The Government initially considered requesting a sentence at the high-end of the applicable Guidelines range due to the defendant's egregious conduct and its effect on American democracy; however, the Government was impressed by the defendant's acceptance of responsibility and admission of guilt at the change of plea hearing. Accordingly, the Government believes a sentence near the low-end of the Guidelines

range is appropriate, as it will reflect the appropriate balance between the nature of his crimes and the mitigating factors represented above.

Based on the arguments provided above, the Guidelines range in this case should be 30 months to 37 months for his convictions for Counts 1 and 2. The Government respectfully asserts that a concurrent sentence near the low-end of the Guidelines range of 32 months' imprisonment each for Counts 1 and 2 is appropriate given the nature and circumstances of this case.

2. *__Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense__*

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such considerations reflect the need for retribution, the need to make the punishment fit the crime, and the need not just to punish, but to punish justly.

In this case, the seriousness of the defendant's crimes is reflected in the actions described above, as well as in the applicable statutes and the Sentencing Guidelines. The defendant's convictions for threating to assault a United States official each subject him to a maximum six-year sentence. 18 U.S.C. § 115(a)(1)(B) and (b)(4).

While the Sentencing Guidelines consider the actions of the defendant when determining a sentencing range, the defendant's offenses in this case are a continuation of the defendant's threats directed at certain groups of individuals. The instant conduct is serious enough on its own, but his continuation of threats after law enforcement contact exhibits a complete lack of respect for the law. The Government's recommendation accounts for the need to promote such respect for the law, reflects the seriousness of the offense, and provides punishment that is sufficient, but not greater than necessary.

### *3. Need to Afford Adequate Deterrence to Criminal Conduct*

A 32-month sentence would also "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The Government asserts that the more serious the crime, and the greater the defendant's role in it, the more important it is to send a strong and clear message that will not only deter others but will also deter the specific defendant. Given the various prior warnings the defendant has received from law enforcement for his past threats and his continued failure to control his criminal impulses, it is clear that such police directives and the potential consequences of his actions did not deter him from further criminal conduct.

Accordingly, there is a need to afford adequate specific deterrence to the criminal conduct of this defendant and the Government believes that a Guidelines-range term of imprisonment in this circumstance is appropriate. Such a sentence is essential to both protect the community and educate this defendant that any continuation of his criminal behavior will ensure even lengthier periods of incarceration.

There is also a need to consider general deterrence to this type of criminal activity, given the effects these crimes have had on the victims and the effects the defendant's crimes have had on American democracy. Frankly, there are too many individuals presently engaged in threatening communications and violence directed towards government officials. Absent responsible leaders and given the environment of disinformation and violent rhetoric that exists in media and in politics, an effective method of providing general deterrence to this type of criminal conduct is the proper punishment of those who threaten government officials. Indeed, not providing effective deterrence for this conduct may cause a chilling effect on the willingness of individuals to serve their fellow citizens through public service. A 32-month sentence should give pause to not only

this defendant before he acts in a similar manner in the future, but to other individuals who may consider similar conduct and are aware of the eventual sentence given to the defendant.

 4. *<u>Need to Protect the Public from Further Crimes of the Defendant</u>*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007)). The defendant's actions over the past several years exhibit a definitive need to protect the public from his threats of violence. He is a danger to various organizations and United States officials. Accordingly, a 32-month sentence is necessary to protect the public from further criminal activity by this defendant.

 5. *<u>Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct</u>*

A 32-month sentence would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). From the outset, a correct calculation of the Guidelines range protects against *unwarranted* disparities among *similarly situated* defendants. *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"). Given the defendant's instant conduct, his lack of criminal history, and the Guidelines range, the Government's recommendation for a sentence near the low-end of the applicable Guidelines range reflects an outcome that is consistent with those with similar criminal history and conduct.

## IV. <u>CONCLUSION</u>

Ultimately, 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines range. The Government respectfully requests

that the defendant's history and conduct in this case, the need to promote respect for the law, the need to deter this defendant and others from future criminal conduct, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

Accordingly, the Government respectfully requests that this Court sustain its objection to the PSR and impose a sentence of 32 months' imprisonment each for Counts 1 and 2, to be run concurrent to one another. The Government further requests that such term of imprisonment be followed by a three-year term of supervised release for the defendant's convictions. Such a sentence would be consistent with the circumstances of this case.

Respectfully submitted,

TERESA A. MOORE
Acting United States Attorney

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of November 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney